**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CHELSEA CABREGA and JAMIE JOSLIN,
*on behalf of themselves and others similarly situated*,

|  |  |
|---|---|
| Plaintiffs, | Case No.: |
|  | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| CAMPBELL SOUP COMPANY, |  |
| Defendant. |  |

---

CHELSEA CABREGA (herein "Plaintiff CABREGA") and JAMIE JOSLIN (herein "Plaintiff JOSLIN") (together "Plaintiffs"), on behalf of themselves and all other persons similarly situated in New York and the United States, by their undersigned attorneys, pursuant to this Class Action Complaint against the Defendant CAMPBELL SOUP COMPANY, alleges the following:

## NATURE OF THE ACTION

1.      Plaintiff CABREGA and Plaintiff JOSLIN (together "Plaintiffs"), bring this class action against Defendant, CAMPBELL SOUP COMPANY. (herein "Defendant" or "CAMPBELL"), for the deceptive practice of marketing its soups (herein the "Products") as having "No Preservatives Added" and or claiming to be "Made With Patience, Not Preservatives,"

(herein, all claims will be referred to as "No Preservatives" Claims) when they actually contains

the preservatives citric acid and/or ascorbic acid:

    a. Campbell's Slow Kettle Style Tomato & Sweet Basil Bisque (citric acid) (**Exhibit A**)
    b. Campbell's Homestyle Harvest Tomato with Basil (citric acid and ascorbic acid) (**Exhibit B**)
    c. Campbell's Homestyle Zesty Tomato Bisque (citric acid) (**Exhibit C**)
    d. Any other CAMPBELL product that claims to have "No Preservatives" despite containing citric acid, ascorbic acid, and/or any other preservatives.

2.    The false misrepresentations are made both on the Products' packaging and online.

3.    By marketing the Products as having "No Preservatives", Defendant wrongfully capitalizes on and reaps enormous profits from consumers' strong preference for food products made free of preservatives.

4.    Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide who, from the applicable limitations period up to and including the present ("Class Period"), purchased Defendant's Products for consumption.

5.    Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade/business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, ConnStat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*

11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and De1ceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Laws ch. 93A;
23) Michigan Consumer Protection Act, § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 *1, et seq.;*
33) New York Deceptive Acts and Practices, Law § 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I Laws § 6-13.1-1, *et seq.;*
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 *1, et seq.;*
43) Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.;*
44) Texas Stat. Ann. § 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
45) Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.;*
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
47) Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.;*
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
49) Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.;*
50) Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

6.      Defendant has been unjustly enriched as a result of its conduct. For these reasons, Plaintiffs seek the relief set forth herein.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.      Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

9.      Furthermore, this court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible

under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and the Defendant has caused harm to class members residing in this District.

**PARTIES**

*California Plaintiff*

11. Plaintiff JOSLIN is, and at all times relevant hereto has been, a citizen of California, and resides in Riverside County. During the Class Period, Plaintiff JOSLIN purchased the 15.5 oz. Campbell's Slow Kettle Style Sweet Tomato and Bisque soup for personal consumption. Plaintiff JOSLIN purchased the soup from a Target in Riverside County for the premium price of $3.19. Plaintiff JOSLIN made this purchase in reliance on the Prominent "Made With Patience, Not Preservatives" representation on the soup container. As a result of Defendant's deceptive conduct, Plaintiff JOSLIN was injured when she paid money for a soup that did not deliver the qualities it promised, misled her as to its contents, and had less valuable contents than advertised. She would not have purchased the soup had she known the truth—that she was receiving an inferior product with preservatives instead of what had been advertised. Plaintiff JOSLIN is willing to purchase the Products in the future, but, she could not rely on the truthfulness of the packaging should she encounter the Products in the future, absent corrective changes to the packaging.

*NY Plaintiff*

12. Plaintiff CABREGA is, and at all times relevant hereto has been, a citizen of the State of New York. During the Class Period, Plaintiff CABREGA purchased the 18.7 oz. Campbell's Homestyle Harvest Tomato and Basil soup for personal consumption. Plaintiff

5

CABREGA purchased the soup in Nassau County for the premium price of $1.99. Plaintiff CABREGA made this purchase in reliance on the "No Preservatives Added" representation on the container. As a result of Defendant's deceptive conduct, Plaintiff CABREGA was injured when she paid money for a soup that did not deliver the qualities it promised, misled her as to its contents, and had less valuable contents than advertised. She would not have purchased the soup had she known the truth—that she was receiving an inferior product with preservatives instead of what had been advertised. Plaintiff CABREGA is willing to purchase the Products in the future, but, she could not rely on the truthfulness of the packaging should she encounter the Products in the future, absent corrective changes to the packaging.

*Defendant*

13.    Defendant CAMPBELL is a company organized under the laws of New Jersey with its address at 1 Campbell Place, Camden, NJ 08103, and address for service of process at c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

14.    Defendant develops, markets, and sells food products under the "CAMPBELL" brand name throughout the United States. The advertising for the Products, relied upon by Plaintiffs and the class, are prepared and/or approved by Defendant and its agents, and are disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertisements for the Products are designed to encourage consumers to purchase the Products and misleads the reasonable consumer, i.e. Plaintiffs and the Class. Defendant owns, manufactures, distributes, creates, and/or authorizes the unlawful, fraudulent, unfair, misleading, and deceptive labeling and advertising for the Products.

6

**FACTUAL ALLEGATIONS**

**Defendant Markets Their Products As Being Free of Preservatives Even Though They Contain the Preservatives Citric Acid and Ascorbic Acid**

15.     The labels of the Products represent that the products have "No Preservatives" when they actually contain the preservatives citric acid and/or ascorbic acid.

16.     Citric acid and ascorbic acid are preservatives as the term are defined by the FDA in 21 C.F.R. § 101.22(a)(5): "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

17.     17. The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1]  The scientific evidence and FDA statements cited below establish that citric acid and ascorbic acid tend to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which these substances are added to the Products. Citric acid and ascorbic acid do not fall into any of the regulatory exemptions from the definition of a preservative.

---

[1] http://www.macmillandictionary.com/us/dictionary/american/tend (last accessed 06/05/2018)

18.     The FDA expressly classifies citric acid and ascorbic acid as preservatives in its

Overview of Food Ingredients, Additives, and Colors, on the FDA website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | **Ascorbic acid, citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.
htm. (last accessed 06/19/2018).

19.     The FDA's classification of citric acid and ascorbic acid as preservatives is further

confirmed by its Warning Letter, dated October 6, 2010, to the manufacturer of the Chiquita brand

"Pineapple Bites with Coconut" and "Pineapple Bites":

> The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22.

See **EXHIBIT D**, FDA Warning Letter dated October 6, 2010 (emphasis added).

20.     Citric acid's status as a preservative is also acknowledged by insiders in the

preservative manufacturing and distribution industries. FBC Industries, Inc., a manufacturer and

supplier of FCC grade citric acid additives, acidulants, buffering agents and preservatives for the

food and beverage industry describes citric acid's function: "Citric acid is the most commonly

used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[2]

### Plaintiffs' Claims Are Not Preempted by the FDCA

21.     Plaintiffs' claims are not preempted by the FDCA because the definition of "preservative" as used herein is identical with that of the FDA (see above).  Moreover, FDA regulations specifically note that claims like "No Preservatives" are non-nutritive claims that are not governed by 21 C.F.R. §101.13.  *See* 21 C.F.R. § 101.65(b)(2).  Since the FDA has not issued specific standards governing when "No Preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations.  Accordingly, Plaintiffs' claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("[P]reemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

### Defendant's Misrepresentations Are Material to a Reasonable Consumer, and Relied Upon by Plaintiffs and the Class

22.     Plaintiffs and Class members reasonably relied on Defendant's representations that the Products are free of preservatives.

23.     Defendant's misrepresentations are misleading and deceive reasonable consumers. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products are misbranded as set forth herein. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). A representation that a product has "No Preservatives" is material to a reasonable consumer when deciding to purchase

---

[2] http://www.fbcindustries.com/Citric_Acid.aspx (last accessed 06/05/2018)

them. Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendant's

Products have "No Preservatives" because it is common knowledge that consumers prefer to avoid

foods with potentially unhealthy additives (see consumer behavior research below).

### Defendant Has an Intent to Mislead

24.     Defendant would not include the representations on the labels of the Products if

these representations would not influence consumer behavior.

25.     By representing that the Products have "No Preservatives", Defendant seeks to

capitalize on consumers' preference for less processed foods with fewer additives and the

association between such products and a wholesome way of life. Consumers are willing to pay

more for less processed products with no additives because of this association, as well as the

perceived higher quality, health, and safety benefits associated with products labeled as being free

of preservatives.

26.     The marketing research firm Mintel reports that more and more Americans are

concerned to avoid food containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they
> perceive the products as closely tied to health. New research from Mintel reveals
> that **84 percent of American free-from consumers buy free-from foods because
> they are seeking out more natural or less processed foods**. In fact, 43 percent of
> consumers agree that free-from foods are healthier than foods without a free-from
> claim, while another three in five believe the fewer ingredients a product has, the
> healthier it is (59 percent).
>
> Among the top claims free-from consumers deem most important are trans-fat-free
> (78 percent) and preservative-free (71 percent).[3]

---

[3] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed 06/05/2018)

27.     Alternet.org reports on research that shows that most Americans are willing to pay a premium price for healthier food options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.
>
> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[4]

28.     Defendant has a natural interest in misrepresenting its Products as free of preservatives given these trends addressed above, despite the presence of citric acid and/or ascorbic acid. The Products' misrepresentations provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

29.     Defendant knows that its "No Preservatives" representations on the Products are false and intends that they be relied upon by Plaintiffs and the Class. Upon information and belief, Defendant employs food scientists who are familiar with the basic properties of citric acid.

**Plaintiffs and the Class Were Injured as The Result of Defendant's Deceptive Practices**

30.     Plaintiffs and the Class were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that were represented to them as preservative-free, and then received Products that were preservative-laden, which have significantly less value. Plaintiffs and the Class were thus deprived of the benefit of their bargain. They would not have purchased the Products, or would only have been willing to pay less for them, had they known the truth. Plaintiffs and the Class were injured in an amount up to the purchase price, the difference

---

[4] http://www.alternet.org/food/8-food-trends-watch-2016 (last accessed 06/05/2018)

11

between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial. Defendant's very inclusion of "No Preservatives" on the Products' labels is an acknowledgment that this increases the Products' perceived value. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 FSupp. 2d 274, 288-89 (S.D.N.Y. 2014) ("Plaintiffs claim that, but for Defendants' 'unfair and deceptive practices,' they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendants' misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349…").

## **CLASS ACTION ALLEGATIONS**

31. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Nationwide Class"):

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate[5]

32.    In the alternative Plaintiff JOSLIN seeks to represent the following subclass (the "California Class"):

> All California residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate

33.    Also in the alternative, Plaintiff CABREGA seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate

34.    The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned

35.    Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

---

[5] See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and Bristol-Myers is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.");In re Chinese-Manufactured Drywall Prods. Liab. Litig., No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *52-53 (E.D. La. Nov. 28, 2017) ("it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties" and interpreting Bristol-Meyers as barring nationwide class actions where jurisdiction over defendant is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts."); Horton v. USAA Cas. Ins. Co., 266 F.R.D. 360, 364 (D. Ariz. 2009) ("Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.").

36.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

37.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

   i.    Whether claiming that Products have "No Preservatives" when they actually contain both citric acid and/or ascorbic acid is misleading;

   ii.   Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

   iii.  Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

   iv.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Products constitutes unfair, unlawful or fraudulent practices;

   v.    Whether Defendant deprived Plaintiffs and the Classes of the benefit of their bargain because the Products purchased had less value than what Defendant warranted;

   vi.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

   vii.  Whether Defendant should be barred from marketing its Products as having "No Preservatives";

   viii. Whether Defendant must disgorge any and all profits it has made as a result of its misconduct;

ix.   The appropriate measure of damages and/or other relief;

x.   Whether Defendant has been unjustly enriched by their scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations, and;

xi.   Whether Defendant should be enjoined from continuing its unlawful practices.

38.   Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs and other Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal, California, and New York State law. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

39.   Plaintiffs will fairly and adequately represent and pursue the interests of the Classes, and have retained competent counsel experienced in prosecuting class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

40.   Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs and

counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Classes.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

42.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

43.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

44.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

45.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Classes as a whole. As such, Defendant's

systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

46.    Plaintiff CABREGA realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

47.    Plaintiff CABREGA brings this claim on behalf of herself and the other members of the Nationwide Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL§ 349").

48.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff CABREGA brings this claim individually and on behalf of the members of the New York Class, for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

49.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

50.    Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory

claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

51.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

52.     The practices employed by Defendant, whereby Defendant advertises, promotes, and markets that its Products contain "No Preservatives" are unfair, deceptive, misleading and in violation of the NY GBL § 349.

53.     The foregoing deceptive acts and practices are directed at consumers.

54.      Defendant should be enjoined from marketing its products as containing "No Preservatives" as described above pursuant to NY GBL § 349.

55.     Plaintiffs are at risk of several types of future injury, each of which justifies the imposition of an injunction. Plaintiff is no longer able to rely on Defendant's representations, regardless of whether they are true or false. Plaintiff may hesitate to purchase Defendant's Products even if it ceases its unlawfully labeling the Products with the "No preservative" misrepresentation. Plaintiff may hesitate to purchase Defendant's Products even if it begins manufacturing the Product without any added preservatives. If the Products are no longer sold with the "No preservative" representations or without any added preservatives, Plaintiff could not uninhibitedly take advantage of those Products because they have been led to believe that they contain preservatives.

56.     The 9th Circuit has recently embraced this approach to analyze injury in consumer

fraud cases:

> We hold that a previously deceived consumer may have standing to seek an
> injunction against false advertising or labeling, even though the consumer
> now knows or suspects that the advertising was false at the time of the original purchase,
> because the consumer may suffer an "actual and imminent, not conjectural or
> hypothetical" threat of future harm. [*Summers v. Earth Island Inst.*, 555 U.S. 488,
> 493, 129 S. Ct. 1142, 1148 (2009).] Knowledge that the advertisement or label was
> false in the past does not equate to knowledge that it will remain false in the
> future. In some cases, the threat of future harm may be the consumer's plausible
> allegations that she will be unable to rely on the product's advertising or labeling
> in the future, and so will not purchase the product although she would like to. *See,
> e.g.*, [*Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012)]; *Lilly v.
> Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 U.S. Dist. LEXIS 34498, 2015 WL
> 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[U]nless the manufacturer or seller has
> been enjoined from making the same representation, [the] consumer . . . won't know
> whether it makes sense to spend her money on the product.").

*Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103, 1115 (9th Cir. 2017).

57.     The Court should follow the lead of California Federal Courts and recognize that a

plaintiff may be injured after she learns of a manufacturer's deception, even though she is unlikely

to fall victim to the exactly the same scheme again in exactly the same manner. To hold otherwise

would immunize manufacturers and render injunctive relief impossible in consumer fraud class

action lawsuits – if learning of a deception removed a plaintiff's standing to seek an injunction,

then wrongdoers could violate the law with impunity, defeating the purpose of consumer

protection statutes.

Plaintiff CABREGA, on behalf of herself and all others similarly situated, respectfully

demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and

attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

## (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

58.    Plaintiff CABREGA realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

59.    Plaintiff CABREGA brings this claim individually and on behalf of the other members of the Nationwide Class for violations of NY GBL § 349.

60.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff CABREGA brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

61.    Defendant's business act and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect consumers from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

62.    The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, the following reasons:

  a. Defendant knowingly and falsely represents and advertises that the Products contain "No Preservatives" with an intent to cause Plaintiff and members of the Classes to believe that they do not contain  preservatives, when they actually contain citric acid;

20

b. Defendant caused Plaintiff and the Classes to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;

c. Defendant made material representations and statements of fact to Plaintiff and the Classes that resulted in Plaintiff and the Classes reasonably believing the represented or suggested state of affairs are what they actually were; and the practices employed by Defendant, whereby Defendant advertises, promotes, and markets that its Product contains "No Preservatives" is unfair, deceptive, and misleading.

63.    Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices are malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

64.    Defendant's actions impact the public interest because Plaintiff and members of the Classes were injured in exactly the same way as thousands of others purchasing the Products as a result of Defendant's generalized course of deception.

65.    The foregoing deceptive acts, and practices were directed at consumers.

66.    The foregoing deceptive acts, and practices caused Plaintiff and other Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and other Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

**COUNT III**

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**

**(FALSE ADVERTISING LAW)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

67.     Plaintiff CABREGA realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

68.     Plaintiff CABREGA brings this claim individually, as well as on behalf of members of the Nationwide class, for violations of NY GBL § 350.

69.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff CABREGA brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

70.     Defendant has been and/or engages in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

71.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

72.     Defendant caused to be disseminated throughout New York, through advertising, marketing and other publications, statements that are untrue and misleading.

73.     Defendant's affirmative misrepresentation that the Products contain "No Preservatives" is material and substantially uniform in content, presentation, and impact upon

22

consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

74.     Defendant has violated NY. Gen. Bus. Law § 350 because its' "No Preservatives" misrepresentations were material and likely to deceive a reasonable consumer.

75.     59. Plaintiff CABREGA and members of the Classes have suffered an injury as a result of Defendant's false and misleading advertising.

Pursuant but not limited to N.Y. Gen. Bus. Law § 350-e, Plaintiff CABREGA and members of the Class seek monetary damages (including actual damages, and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, any interest and attorneys' fees and costs.

## COUNT IV.

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,
(Cal. Civ. Code § 1750, et seq.)

76.     Plaintiff JOSLIN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

77.     Plaintiff JOSLIN brings this claim individually and on behalf of the other members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

78.     Plaintiff JOSLIN and California Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff JOSLIN and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff JOSLIN and the California Class members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

79.     Products that Plaintiff JOSLIN and other California Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

80.     Defendant's actions, representations, and conduct violated and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

81.     Defendant violates federal and California law because the Products claim to have "No Preservatives", when they actually contain citric acid and/or ascorbic acid.

82.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have qualities which they do not have.

83.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

84.     Plaintiff JOSLIN and the California Class members are not sophisticated experts about the corporate branding, labeling and packaging practices. Plaintiff JOSLIN and the

24

California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

85.     Plaintiff JOSLIN and the California Class suffered injuries caused by Defendant because (a) they were denied the benefit of their bargain due to Defendant's deceptive package misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

86.     Plaintiff JOSLIN seeks damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT V.

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,
### (California Business & Professions Code § 17200, et seq.)

87.     Plaintiff JOSLIN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

88.     Plaintiff JOSLIN brings this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

89.     The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

90.     Defendant violated and continues to violate federal and California law because the Products advertise having no preservatives when they actually contain citric and/or ascorbic acid.

91.     Defendant's business practices, described herein, violated and continue to violate the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and

Cosmetic Act, 21 U.S.C. 343(d), California Health & Safety Code § 110690, the CLRA, and other applicable law as described herein.

92.     Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. Defendant's deceptive advertising offends the public policy advanced by the FDCA to ensure that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

93.     Plaintiff JOSLIN and members of the California Class are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiff JOSLIN and members of the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

94.     Plaintiff JOSLIN and members of the California Class lost money or property as a result of Defendant's UCL violations because (a) they were denied the benefit of their bargain due to Defendant's deceptive package misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

## COUNT VI.

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,
### (California Business & Professions Code § 17500, et seq.)

95.     Plaintiff JOSLIN realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

96.     Plaintiff JOSLIN bring this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.

97.     Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

98.     Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the product packaging was intended as inducements to purchase Defendant's Products. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

99.     Defendant violates § 17500, *et seq*. by misleading Plaintiff JOSLIN and the California Class into believing the Products have "No Preservatives".

100.    Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its representations of the Products are untrue and misleading.

101.    Plaintiff JOSLIN and the members of the California Class lost money or property as a result of Defendant's FAL violations because (a) they were denied the benefit of their bargain due to Defendant's deceptive label misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent

Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

## COUNT VII.

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

102.     Plaintiffs realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

103.     Defendant intentionally makes materially false and misleading representations regarding the composition of the Product.

104.     Plaintiffs and members of the Classes reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain a preservative, and they would not have purchased the Products had they known they were mislabeled.

105.     Defendant intended that Plaintiffs and the Classes rely on its misrepresentations.

106.     Plaintiffs and members of the Classes have been injured as a result of Defendant's fraudulent conduct.

107.     Defendant is liable to Plaintiffs and members of the Classes for damages sustained as a result of Defendant's fraud.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action, appointing Plaintiffs as representatives of the Nationwide Class, the New York Class and California Class in the alternative;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d. All recoverable compensatory and other damages sustained by Plaintiffs and the Classes;

e. Actual and/or statutory damages for injuries suffered by Plaintiffs and the Classes and in the maximum amount permitted by applicable law;

f. An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiffs and all members of the Classes the amounts paid for the Products;

g. Statutory pre-judgment and post-judgment interest on any amounts;

h. Payment of reasonable attorneys' fees and costs; and

i. Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: July 2, 2018

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

By:      /s/ C.K. Lee
              C.K. Lee, Esq.

30